966 P.2d 891 (1998)
136 Wash.2d 783
John R. TORRANCE and William Torrance, individually and as Trustee of the William S. Torrance Living Trust, Respondents,
v.
KING COUNTY, a subdivision of the State of Washington, Petitioner.
No. 66088-3.
Supreme Court of Washington, En Banc.
Argued June 9, 1998.
Decided November 12, 1998.
Norm Maleng, King County Prosecutor, H. Kevin Wright, Darren E. Carnell, Deputy's, Seattle, for Appellant.
Bogle & Gates, Elaine L. Spencer, Ronald T. Schaps, Seattle, for Respondents.
JOHNSON, J.
We are asked to determine whether a superior court can issue a constitutional writ of certiorari when a county makes a decision not to redesignate property from agricultural to commercial or industrial and the landowner does not exhaust all appeals. In this case, we conclude the superior court cannot, and reverse the decision of the lower court.
*892 The controversy surrounds 25 acres of property zoned agricultural in King County, outside the Kent city limits, but inside Kent's annexation area. The property had been zoned agricultural since 1941, but Torrance acquired the property in the 1960s in the hope of eventual industrial or commercial development.
In 1992, pursuant to the Growth Management Act (GMA), RCW 36.70A, King County designated the Torrance property agricultural lands of long-term commercial significance. The adoption of the comprehensive plan on November 18, 1994 did not change the property's agricultural zoning, and Torrance did not appeal the designation.
In January 1995, King County enacted an ordinance adopting zoning, zoning maps, and development conditions to implement the 1994 comprehensive plan. Although still designated agricultural, the Torrance property received "P-suffix" zoning conditions. Under the terms of "P-suffix" conditions, the property retained its agricultural zoning, but the property-specific "P-suffix" zoning conditions allowed Torrance to use the property for "retail nursery operations, garden store, food gourmet stores, specialty food stores, university agricultural programs, restaurants, microbrewery and winery." King County Ordinance No. 11653. Torrance did not challenge the application of the "P-suffix" zoning conditions to his property, but alleges he had no reason to do so because the permitted uses satisfied his needs.
The compatibility of "P-suffix" zoning conditions to the purposes of the GMA were challenged by other parties. In September 1995, the Central Puget Sound Growth Management Hearings Board (Board) held the "P-suffix" zoning conditions were not in compliance with the GMA. Clerk's Papers at 146; see Alberg v. King County, No. 95-3-0041, 1995 WL 903142, at 15 (Central Puget Sound Growth Mgmt. Hr'gs Bd. Final Dec. and Order Sept. 13, 1995).[1] In response to the Alberg decision, King County enacted Ordinance No. 12061 in December 1995, which removed the "P-suffix" conditions from the 1994 comprehensive plan and from the Torrance property. The removal of the "P-suffix" conditions did not alter the underlying agricultural zoning of the property, and Torrance did not appeal King County's action.
In 1996, Torrance requested removal of the Torrance property from agricultural designation. This request was included in an amendment to proposed Ordinance No. 96-496 and would have rezoned the property from "the Agricultural Production district and Agriculture Land Use Designations to Industrial." Clerk's Papers at 147. The proposed amendments were considered, but were rejected and deleted before that ordinance was adopted because the King County Council decided not to change the property's agricultural designation.
Torrance petitioned the Board to review King County's decision not to reclassify the property. Clerk's Papers at 124-25; see RCW 36.70A.280-.290. On March 31, 1997, the Board made two decisions. First, the Board determined Torrance was time barred from challenging King County's agricultural designation of the property because more than 60 days had passed since the County's 1994 and 1995 GMA actions. Second, the Board found King County in compliance with the GMA because the County's decision not to adopt Torrance's proposed amendments was not an illegal action under RCW 36.70A.130. Clerk's Papers at 149-50. Despite the availability of judicial review in superior court, Torrance did not appeal the Board's decision. See RCW 34.05.510; RCW 36.70A.300.
Instead, Torrance pursued a lawsuit filed December 13, 1996 (prior to the Board's decision) in King County Superior Court. The lawsuit challenged King County's 1996 decision not to adopt Torrance's proposed amendments changing the agricultural designation of Torrance's property. Torrance's complaint included a cause of action under Washington's Land Use Petition Act (LUPA), RCW 36.70C, arguing the decision not to adopt the proposed amendments was a *893 land use decision subject to (1) judicial review; (2) a claim for damages under RCW 64.40; (3) a taking claim; and (4) a claim under 42 U.S.C. § 1983 for violation of Torrance's constitutional right to substantive due process. Torrance later amended the complaint to include a request for a constitutional writ of certiorari.[2]
Following briefing and argument by the parties, the superior court determined the constitutional writ of certiorari would issue. The superior court found Torrance's property was not agricultural land under the GMA and King County's decision not to change the agricultural designation in 1996 was illegal. The superior court also found King County's failure to change the designation of Torrance's property following the Alberg decision arbitrary and capricious. The superior court ordered King County to adopt legislation changing the designation of Torrance's property from agricultural to either commercial or industrial.
King County filed a petition for discretionary review of the superior court decision in the Court of Appeals. Torrance moved for transfer to this court. The motion was granted.
We must determine whether the superior court erred in granting the constitutional writ of certiorari. We review this issue de novo. Thomsen v. King County, 39 Wash.App. 505, 514-15, 694 P.2d 40 (1985) (appellate court should conduct de novo review of superior court's writ decision).
A constitutional writ of certiorari is not a matter of right, but discretionary with the court. Saldin Sec., Inc. v. Snohomish County, 134 Wash.2d 288, 304, 949 P.2d 370 (1998). The law is well established that discretion can be exercised when no other adequate remedy at law is available and when the decision below is arbitrary, capricious, or contrary to law. Saldin Sec., 134 Wash.2d at 292-93, 949 P.2d 370; Williams v. Seattle Sch. Dist. No. 1, 97 Wash.2d 215, 221, 643 P.2d 426 (1982). If either a statutory writ of review or direct appeal of the decision is available, discretion to issue a constitutional writ of certiorari generally does not exist. Saldin Sec., 134 Wash.2d at 292-93, 949 P.2d 370.
The critical inquiry in this case is whether an adequate remedy at law existed and was available to the landowner. While many zoning decisions have been made in this case, for purposes of this opinion we examine whether the superior court can exercise its discretion and issue a constitutional writ of certiorari after the Board's March 31, 1997 decision. To do so, we must examine what potential remedies were available to the landowner after the Board's decision was made and determine whether the potential remedies provided the opportunity for adequate relief.
The GMA establishes an administrative review process designed to resolve allegations that a local government failed to comply with the GMA's requirements. See RCW 36.70A.250-.345. The GMA requires that any person making such a challenge file a petition with a growth management hearings board (GMHB). RCW 36.70A.280.[3] A petition for *894 review must be filed within 60 days of the date the local government took the challenged action. RCW 36.70A.290(2).[4] The GMHB shall issue a final order finding the state agency, county, or city in compliance with the GMA, or not. RCW 36.70A.300.[5] If a GMHB determines there is noncompliance, it shall remand the matter to the state agency, county, or city which must then correct the error and comply with the requirements of the GMA. RCW 36.70A.300(3).
Any aggrieved party may appeal a GMHB decision to superior court within 30 days of the final order of a GMHB. RCW 36.70A.300(5). A county zoning decision and a GMHB determination that the county's decision was legal are decisions that may be appealed to superior court because compliance with GMA directives are involved. Washington's Administrative Procedure Act (APA), RCW 34.05, governs judicial review of GMHB decisions, and the party asserting the invalidity of the agency decision carries the burden of proof. See generally RCW 36.70A; RCW 34.05.570(1)(a). A superior court can grant relief if the action substantially prejudiced the party appealing the GMHB's decision. *895 RCW 34.05.570(1)(d). Additionally, a superior court can also grant relief if: the order is in violation of a constitutional provision; the order is outside the statutory authority or jurisdiction of the agency; an agency engaged in an unlawful decisionmaking process or failed to follow its prescribed procedure; an agency has erroneously interpreted or applied the law; the order is not supported by the evidence; an agency has not decided all issues requiring resolution by the agency; a motion for disqualification was made and improperly denied; the order is inconsistent with a rule of the agency; or the order is arbitrary or capricious. RCW 34.05.570(3)(a)-(i).[6] The writ of certiorari is unavailable unless the remedies available under RCW 34.05.570 are inadequate for full and complete relief. If an opportunity for full and complete relief is available, the general rule that the existence of a statutory appeals process bars a court from exercising discretion and issuing a constitutional writ of certiorari must apply.
We find that statutory review was available for Torrance to seek relief. In 1996, the King County Council decided not to adopt Torrance's proposed amendments. The King County Council had the authority and jurisdiction to determine whether amendments or revisions to the comprehensive plan were necessary.[7] As permitted by *896 statute, Torrance sought review of the County Council's decision by a GMHB. RCW 36.70A.280-.300. The Board determined it did not have jurisdiction to decide whether the 1994 or 1995 decisions complied with the GMA, but found King County had the authority not to adopt Torrance's proposed amendments. Torrance did not wait to appeal the Board's decision as permitted by RCW 36.70A.300(5), but chose instead to immediately proceed with a lawsuit filed December 13, 1996 in superior court (amended to include the constitutional writ of certiorari). The decision to forgo an available appeal and to instead seek a remedy by means of a constitutional writ of certiorari is fatal to Torrance's case.[8]
Judicial review of a GMHB decision under RCW 36.70A.300(5) and RCW 34.05.570 provides an aggrieved party the opportunity for adequate and complete relief from a GMHB decision. In this case, an appeal of the Board's decision to superior court would have provided Torrance with an opportunity to pursue the remedy he desired. Torrance argued the decision not to rezone the property was arbitrary, capricious, and illegal because, under the GMA, the property was not agricultural. Under the statutory appeals process, a superior court could provide a remedy if Torrance were correct. Torrance failed to avail himself to this process.
We hold the constitutional writ of certiorari is legally unavailable where a right to appeal exists and the failure to appeal is not excused. In this case, the superior court erroneously exercised its discretion by issuing the constitutional writ of certiorari because the opportunity for an adequate remedy was available and any final decision of a GMHB is appealable. Torrance's excuse that an appeal was not necessary or required because the Board's decision was not on the merits is incorrect. The only statutory requirement for appeal is that the Board's decision be final, which the decision here was.
The superior court is not a zoning review superauthority permitted to substitute its judgment for that of the legislative authority under the guise of a constitutional writ of certiorari. Such a result is inconsistent with the purpose of the constitutional writ of certiorari. A writ of certiorari is an extraordinary remedy granted at the discretion of the court, but it is not available when a party has failed to avail itself to other procedures that would have afforded the opportunity for an adequate remedy. For these reasons, we reverse the decision of the superior court.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, MADSEN and TALMADGE, JJ., BAKER, J., pro tem, concur.
SANDERS, J., dissenting.
After years of attempting to get the King County Council to designate their land in compliance with the Growth Management Act (GMA), John and William Torrance today find themselves with neither justice nor legal recourse. Examining neither the merits of their claim nor the propriety of the council's action, the majority claims the Torrances cannot be heard because the constitutional writ of certiorari is unavailable.
This triumph of form over substance is only possible because the majority abrogates the Torrances' constitutional right to a writ of certiorari. While the constitutional right is not absolute, we have held it is nonetheless vested in the trial court's discretion and may only be set aside on review where there is no *897 "tenable reason" for its exercise. See Bridle Trails Comm. Club v. City of Bellevue, 45 Wash.App. 248, 252, 724 P.2d 1110 (1986). In fact, this is exactly the case which demands the issuance of the writ because here the superior court, in proper exercise of its discretion, reviewed the actions of King County and found good cause to grant Torrances the relief requested.
The Torrances own a 25-acre parcel which has been paralyzed in an agricultural zone for at least five and a half decades. Today the land lies in the heart of south King County's industrial and commercial area, surrounded by thoroughfares and mainline railroad tracks. Directly to the east is Central Avenue, which carries an estimated 25,000 vehicles a day, while just south of the land is South 277th Street which, after its planned widening to five lanes, will be carrying about 32,500 cars each day. In point of fact all the properties bordering Central Avenue between downtown Kent and downtown Auburn are either commercial or industrial zoned or, alternatively, have had their development rights purchased by King County except this one parcel. It is an island of disuse.
Over the course of their ownership of said parcels, which began in the 1960's, the Torrances have paid about $130,000 in property taxes. But during like period the Torrances managed to earn only about $5,000 by allowing cattle to graze on the land.[1] But now even this limited source of agricultural income is no longer available as their last tenant determined the land is not suitable for grazing. And, in the opinion of both the professional farmers who have used it and King County itself, the parcel is too small for any other agricultural purposes.[2] The Torrances' attempts to interest commercial agricultural farms in the land have likewise been unsuccessful.
Despite the economic hardship, illogic, and probable legal invalidity of the county's agricultural designation of their land, the Torrances have attempted to cooperate and compromise with governing authorities. Apparently this was their fatal error because it was only after repeated unsuccessful attempts to achieve a use designation consistent with the GMA that the Torrances finally brought the lawsuit which this court now summarily dismisses as untimely notwithstanding its obvious merit.
Article IV, section 6, of the Washington State Constitution expressly vests the superior court with judicial power to review administrative decisions for illegal or manifestly arbitrary acts. Saldin Sec., Inc. v. Snohomish County, 134 Wash.2d 288, 292, 949 P.2d 370 (1998). No additional "extraordinary" circumstances are required to justify the writ's issuance. Id. at 294, 949 P.2d 370. As we have noted, the broad language of the constitution's grant of power to issue writs of certiorari "is self-executing and needs no legislation to vest this power in the superior courts." State ex rel. Clark v. Hogan, 49 Wash.2d 457, 461, 303 P.2d 290 (1956). In fact, we have held the power to review illegal actions always lies with the court and may not be limited by the legislature. See Saldin Sec., Inc., 134 Wash.2d at 295-96, 949 P.2d 370; Pierce County Sheriff v. Civil Serv. Comm'n, 98 Wash.2d 690, 693-94, 658 P.2d 648 (1983); State ex rel. Cosmopolis Consol. Sch. Dist. v. Bruno, 59 Wash.2d 366, 369, 367 P.2d 995 (1962). Zoning regulations are certainly subject to such review. Pierce v. King County, 62 Wash.2d 324, 332, 382 P.2d 628 (1963).
The writ is proper so long as tenable reasons support the discretionary ruling of the superior court. Bridle Trails Comm. Club, 45 Wash.App. at 252, 724 P.2d 1110.[3]See *898 also State ex rel. Cawley v. Town of Bremerton, 32 Wash. 508, 511, 73 P. 477 (1903) (noting rule that it is within the discretion of the court to issue constitutional writs); Birch Bay Trailer Sales, Inc. v. Whatcom County, 65 Wash.App. 739, 746, 829 P.2d 1109 (1992) (citing trial judge's statement that a matter did not rise to a constitutional action to support appellate court's conclusion the trial court did not abuse its discretion).
The majority, however, does not address whether the trial court abused its discretion. Instead, the majority draws its entire analysis from the mere existence of a right to appeal a final determination of an administrative agency pursuant to the Administrative Procedure Act (APA). Majority at 894-895. Thus, the majority opines, the decision to "seek a remedy by means of a constitutional writ of certiorari is fatal to Torrance's case." Majority at 896.[4]
A superior court's grant of the constitutional writ has never been subject to the kind of complacentin fact nonexistentreview in which the majority here engages. Specifically, we have recently expressly stated the mere existence of a statutory appeal is insufficient grounds to reverse the grant of a writ: To justify dismissal, the available appeal must truly offer an effective remedy to the petitioner. Saldin Sec., Inc., 134 Wash.2d at 295, 949 P.2d 370. The APA appeal procedure offered no such remedy for the Torrances.
Procedurally the GMA provides for review, under the APA, of final decisions of a growth management hearings board (GMHB). RCW 36.70A.300(5). But here the only decision of the GMHB arguably subject to appeal was that it had no jurisdiction to hear the Torrance claim in the first place. Although the APA generally allows review of incorrect agency orders (RCW 34.05.570(3)), the APA does not offer the Torrances an adequate remedy at law since the merits of their claim were not subject to the GMHB's jurisdiction, as the board correctly concluded. As the GMHB decision subject to appeal under the APA did not relate to the merits, such an appeal would have accomplished nothing.[5]
As the administrative board noted, its jurisdiction is limited. The board has consistently interpreted its jurisdiction narrowly, having found, for example, that it has no power to consider constitutional, common law, or equitable questions. Alberg v. King County, No. 95-3-0041, Central Puget Sound Growth Mgmt. Hrg's Bd. Decision and Order 1109 (Sept. 13, 1995).
The GMA grants the board limited jurisdiction to declare plans invalid, but only if a petition is filed within 60 days of publication of the comprehensive plan. RCW 36.70A.290(2). The board found that the last action taken by King County was outside this timeline, correctly concluding it simply had no jurisdiction to hear the merits of the Torrance claim. Consequently the Torrances had no administrative remedy, at least at the time they commenced this writ action.
Such is precisely the situation which invites a constitutional writ of certiorari, for the Torrances had no recourse but the writ. That the Torrances did not appeal to the GMHB earlier does not necessarily bar the writ insofar as a trial court has tenable reasons for granting it, especially as zoning regulations by nature are ongoing. In law we have adhered to the clear rule that compliance with a statute of limitations is specifically not required when the writ of certiorari is sought to review a zoning regulation. Pierce v. King County, 62 Wash.2d at 333, 382 P.2d *899 628. Although it is true that failure to comply with a statute of limitations or administrative appeal period might provide the superior court with a discretionary basis to deny the writ, here, considering the totality of the facts, the superior court found good cause to justify the exercise of its discretion to grant the writ.
Even assuming an ongoing unlawful zoning designation may be barred, under any circumstances, from challenge by the mere passage of time, at most the trial court need only find the delay was for "good cause" to entertain the writ on the merits. See Saldin Sec., Inc., 134 Wash.2d at 293, 949 P.2d 370. And we must give the trial court maximum deference in its determination, seeking only a "tenable reason" to sustain it.
Here there were many "tenable reasons" which justified the trial court's exercise of discretion to grant the writ. The Torrances did not appeal King County's January 1995 designation of its land as "P-suffix" agricultural because that designation allowed sufficient commercial use of the land.[6] Later in that year, the GMHB abolished the P-suffix condition, and once again King County designated the Torrance property agricultural. Again, Torrance did not appeal but only because of implied promises by the county that if they could just find other suitable land that could be designated agricultural, the county would give the subject acreage an industrial designation. Only after a futile year and an investment of over 1,000 hours of time did the Torrances finally give up this quest.[7] But when they again petitioned the county to redesignate the land in compliance with state law, the county once again refused, well after the GMA administrative appeal period had run, leaving the Torrances with no administrative avenue of appeal. Thus, the learned trial judge was precisely correct when he noted:
It is fundamentally troublesome to the Court that the petitioners are without the ability to have anyone re-examine the fundamental, legally erroneous determination that this was agricultural property; and I think that's the precise purpose for the existence of the writ certiorari.
Transcript of Oral Argument Re: Property Designation, Before the Honorable Philip G. Hubbard (7/21/97) (Torrance v. King County, No. 96-2-21775-1) at 59.
There is nothing in the facts of this case nor in the majority opinion that demonstrates the superior court's grant of the writ "was untenable." To the contrary, the facts amply support the superior court's conclusion that the Torrances had been harmed by King County's designation of their land in an unlawful manner prohibited by the GMA. Moreover, the county's designation in violation of state statute is an affront to the public welfare and lawful order as whatever police power interest justified the legislation is defeated by its violation. Indeed superior court's conclusion that this harm would continue unless relief was granted is obviously beyond contest.
Finally, I emphatically disagree with the majority's bold assertion that allowing the Torrances to proceed under the constitutional writ would turn the superior court into a "zoning review superauthority permitted to substitute its judgment for that of the legislative authority...." Majority at 16. In fact, it is the county which has usurped the legislative authority, while it is the court which guards the state legislature's prerogative to set forth, and limit, county zoning authority through the GMA.
The majority allows an unlawful county zoning designation to continue with no redress by vacating the Torrances' constitutional writ of certiorari to which they are entitled. The superior court's exercise of its discretion was proper and its decision on the *900 law and the facts was correct. Its holding should be affirmed.
NOTES
[1] Torrance did not participate in the Alberg case because Torrance argues King County did not notify him the appeal was pending and because the Puget Sound Trust (plaintiffs in the Alberg case) did not join Torrance as an indispensable party.
[2] The LUPA claims were dismissed by court order on April 24, 1997 because the superior court found King County took no action subject to challenge under LUPA. Torrance did not appeal the dismissal of the LUPA claims. Still pending in the superior court is a trial on damages Torrance may have suffered due to King County's actions.
[3] 36.70A.280 (1996). Matters subject to board review.

"(1) A growth management hearings board shall hear and determine only those petitions alleging either:
"(a) That a state agency, county, or city planning under this chapter is not in compliance with the requirements of this chapter, chapter 90.58 RCW as it relates to the adoption of shoreline master programs or amendments thereto, or chapter 43.21C RCW as it relates to plans, development regulations, or amendments, adopted under RCW 36.70A.040 or chapter 90.58 RCW; ...
". . . .
"(2) A petition may be filed only by the state, a county or city that plans under this chapter, a person who has either appeared before the county or city regarding the matter on which a review is being requested or is certified by the governor within sixty days of filing the request with the board, or a person qualified pursuant to RCW 34.05.530.
"(3) For purposes of this section `person' means any individual, partnership, corporation, association, governmental subdivision or unit thereof, or public or private organization or entity of any character."
[4] 36.70A.290 (1996). Petitions to growth management hearings boardsEvidence.

"(1) All requests for review to a growth management hearings board shall be initiated by filing a petition that includes a detailed statement of issues presented for resolution by the board.
"(2) All petitions relating to whether or not an adopted comprehensive plan, development regulation, or permanent amendment thereto, is in compliance with the goals and requirements of this chapter or chapter 90.58 or 43.21C RCW must be filed within sixty days after publication by the legislative bodies of the county or city.
". . . .
"(3) Unless the board dismisses the petition as frivolous or finds that the person filing the petition lacks standing, the board shall, within ten days of receipt of the petition, set a time for hearing the matter.
"(4) The board shall base its decision on the record developed by the city, county, or the state and supplemented with additional evidence if the board determines that such additional evidence would be necessary or of substantial assistance to the board in reaching its decision.
"(5) The board, shall consolidate, when appropriate, all petitions involving the review of the same comprehensive plan or the same development regulation or regulations."
[5] 36.70A.300 (1996). Final orders.

"(1) The board shall issue a final order within one hundred eighty days of receipt of the petition for review, or, when multiple petitions are filed, within one hundred eighty days of receipt of the last petition that is consolidated. Such a final order shall be based exclusively on whether or not a state agency, county, or city is in compliance with the requirements of this chapter, chapter 90.58 RCW as it relates to adoption or amendment of shoreline master programs, or chapter 43.21C RCW as it relates to plans, development regulations, and amendments thereto, adopted under RCW 36.70A.040 or chapter 90.58 RCW. In the final order, the board shall either: (a) Find that the state agency, county, or city is in compliance with the requirements of this chapter or chapter 90.58 RCW as it relates to the adoption or amendment of shoreline master programs; or (b) find that the state agency, county, or city is not in compliance with the requirements of this chapter or chapter 90.58 RCW as it relates to the adoption or amendment of shoreline master programs, in which case the board shall remand the matter to the affected state agency, county, or city and specify a reasonable time not in excess of one hundred eighty days within which the state agency, county, or city shall comply with the requirements of this chapter.
"(2) A finding of noncompliance and an order of remand shall not affect the validity of comprehensive plans and development regulations during the period of remand, unless the board's final order also:
"(a) Includes a determination, supported by findings of fact and conclusions of law, that the continued validity of the plan or regulation would substantially interfere with the fulfillment of the goals of this chapter; and
"(b) Specifies the particular part or parts of the plan or regulation that are determined to be invalid, and the reasons for their invalidity.
"(3) A determination of invalidity shall:
"(a) Be prospective in effect and shall not extinguish rights that vested under state or local law before the date of the board's order; and
"(b) Subject any development application that would otherwise vest after the date of the board's order to the local ordinance or resolution that both is enacted in response to the order of remand and determined by the board pursuant to RCW 36.70A.330 to comply with the requirements of this chapter.
"(4) If the ordinance that adopts a plan or development regulation under this chapter includes a savings clause intended to revive prior policies or regulations in the event the new plan or regulations are determined to be invalid, the board shall determine under subsection (2) of this section whether the prior policies or regulations are valid during the period of remand.
"(5) Any party aggrieved by a final decision of the hearings board may appeal the decision to superior court as provided in RCW 34.05.514 or 36.01.050 within thirty days of the final order of the board."
[6] RCW 34.05.570(3). "Review of agency orders in adjudicative proceedings. The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:

"(a) The order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied;
"(b) The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law;
"(c) The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure;
"(d) The agency has erroneously interpreted or applied the law;
"(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;
"(f) The agency has not decided all issues requiring resolution by the agency;
"(g) A motion for disqualification under RCW 34.05.425 or 34.12.050 was made and was improperly denied or, if no motion was made, facts are shown to support the grant of such a motion that were not known and were not reasonably discoverable by the challenging party at the appropriate time for making such a motion;
"(h) The order is inconsistent with a rule of the agency unless the agency explains the inconsistency by stating facts and reasons to demonstrate a rational basis for inconsistency; or
"(i) The order is arbitrary or capricious."
[7] 36.70A.130 (1996). Comprehensive plansAmendments.

"(1) Each comprehensive land use plan and development regulations shall be subject to continuing evaluation and review by the county or city that adopted them.
Any amendment or revision to a comprehensive land use plan shall conform to this chapter, and any change to development regulations shall be consistent with and implement the comprehensive plan.
"(2)(a) Each county and city shall establish and broadly disseminate to the public a public participation program identifying procedures whereby proposed amendments or revisions of the comprehensive plan are considered by the governing body of the county or city no more frequently than once every year except that amendments may be considered more frequently under the following circumstances:
"(i) The initial adoption of a subarea plan; and
"(ii) The adoption or amendment of a shoreline master program under the procedures set forth in chapter 90.58 RCW.
"(b) All proposals shall be considered by the governing body concurrently so the cumulative effect of the various proposals can be ascertained. However, after appropriate public participation a county or city may adopt amendments or revisions to its comprehensive plan that conform with this chapter whenever an emergency exists or to resolve an appeal of a comprehensive plan filed with a growth management hearings board or with the court.
"(3) Each county that designates urban growth areas under RCW 36.70A.110 shall review, at least every ten years, its designated urban growth area or areas, and the densities permitted within both the incorporated and unincorporated portions of each urban growth area. In conjunction with this review by the county, each city located within an urban growth area shall review the densities permitted within its boundaries, and the extent to which the urban growth occurring within the county has located within each city and the unincorporated portions of the urban growth areas. The county comprehensive plan designating urban growth areas, and the densities permitted in the urban growth areas by the comprehensive plans of the county and each city located within the urban growth areas, shall be revised to accommodate the urban growth projected to occur in the county for the succeeding twenty-year period."
[8] At oral argument Torrance argued an appeal under RCW 36.70A.300(5) was not required because the March 31, 1997 Board decision was not on the merits. This argument fails because the only requirement for appealing a decision under RCW 36.70A.300(5) is that the decision be a final decision of a GMHB. The March 31, 1997 Board decision is titled, ORDER GRANTING DISPOSITIVE MOTION, and states, in part:

"Based upon a review of the petition for review, the briefs of the parties, the RCWs, the Board's Rules of Practice and Procedure and prior decisions of this Board and the courts, the Board enters the following ORDER:
Respondent King County's motion to dismiss is granted; Torrance's petition for review (Case No. 96-3-0038) is dismissed with prejudice. The Hearing on the Merits, scheduled in the Notice of Hearing in this matter, is canceled.
So ORDERED this 31st day of March, 1997." We find the Board's decision constitutes a final decision subject to appeal. Clerk's Papers at 150.
[1] In actuality, the Torrance agricultural "income" has been a net loss of $1,000, since they spent $6,000 on a crop of winter wheat that they were subsequently unable to sell. Clerk's Papers at 437.
[2] Smith Brothers Farms, which had been grazing its cattle on the Torrance land, wrote that the "property is too small for any other agricultural purposes." Record at 10112. King County, in its booklet published about the GMA, recommends a minimum of 35 acres for full-time row crops or livestock operations and 60 acres for dairy pasture operations. King County 1994 Comprehensive Plan, ch. 6, Natural Resource Lands § RL-304, at 105, reprinted in Br. of Appellant at App. 1.
[3] This is nothing more than a restatement of the well-established test for abuse of discretion. See, e.g., State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971) ("Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.").
[4] While it is true that we have said that the constitutional writ will not ordinarily be obtainable if a direct appeal is available, we have made it very clear that there exists no general rule addressing when certiorari should be denied because another avenue of appeal may lie. Saldin Sec., Inc. v. Snohomish County, 134 Wash.2d 288, 293 n. 2, 949 P.2d 370 (1998) (citing Bridle Trails Comm. Club v. City of Bellevue, 45 Wash. App. 248, 252, 724 P.2d 1110 (1986)).
[5] At the most, the Torrances' only appeal under the APA would be the GMHB's decision that it had no jurisdictionan appeal that they would probably lose and one that would be ineffective since it would not address the merits of their claim.
[6] As the superior court said, "the nature of that decision was such that the petitioners would have seen no reason to appeal from it." Transcript of Oral Argument Re: Property Designation, Before the Honorable Philip G. Hubbard (7/21/97) (Torrance v. King County, No. 96-2-21775-1) at 59.
[7] The Torrances allege that at least one landowner with suitable land who had been willing to have her property zoned agricultural would not deal with them because a member of the county staff told her to "stay away from us and our situation." Transcript of Metropolitan King County Council Growth Mgmt. & Housing Comm. Meeting (6/12/96) (Record at 20129) at 1.