996 P.2d 1087 (2000)
100 Wash.App. 165
Dr. J. Arthur STEWART and Ardella Stewart, husband and wife, Appellants,
v.
WASHINGTON STATE BOUNDARY REVIEW BOARD FOR KING COUNTY, King County, City of Auburn, Respondents.
No. 42041-1-I.
Court of Appeals of Washington, Division 1.
February 28, 2000.
Publication Ordered March 21, 2000.
*1088 Robert E. West Jr., West & Collins PS, Auburn, WA, Elaine L. Spencer, Graham & Dunn, Seattle, WA, for Appellants.
Michael J. Reynolds, Auburn, WA, for Defendants.
Robert C. Kaufman, Herman, Recor, Kaufman & Simmerly, Bellevue, WA, H.K. Wright, Peter G. Ramels, King Co. Courthouse, Seattle, WA, for Respondents.
ELLINGTON, J.
The Washington State Boundary Review Board (BRB) is not the appropriate forum for a challenge to a county's comprehensive plan. King County's Comprehensive Plan designates Stewarts' property for agricultural use. Stewarts first objected to this designation in a BRB proceeding in 1997, when the BRB considered a petition from the City of Auburn to annex the land. The BRB found the petition premature in the absence of an interlocal agreement to preserve the resource character of the land, as contemplated by the comprehensive plan. Under the circumstances presented here, denial of annexation was not error, and we affirm the BRB.

FACTS
This case involves the proposed annexation by the City of Auburn of a 12 acre parcel owned by Arthur and Ardella Stewart. The Stewart property lies within the King County urban growth area. It also lies within the Lower Green River Agricultural Production District. The land is designated "agricultural" in the King County Comprehensive Plan, and has apparently carried an official agricultural designation for more than 20 years.
The Stewarts petitioned the City of Auburn to annex the property. The City approved the annexation and filed a notice of intent with the Washington State Boundary Review Board for King County, stating that the proposed annexation area "will likely transition into a light industrial character and be consistent with the light industrial neighborhood that now exists to the south and east."
King County's Comprehensive Plan was adopted in 1994 pursuant to the Growth *1089 Management Act, RCW 36.70A (GMA). Under the plan, agricultural resource lands should only be annexed after an interlocal agreement is in place to preserve their resource character:
Designated Forest and Agricultural Production District lands should only be annexed by cities if continued resource-based uses or other compatible uses are ensured through inter-local agreements.[1]
This section of the plan implemented Countywide Planning Policies, adoption of which was required by the legislature in order to provide a framework for the later adoption of consistent comprehensive plans within joint planning areas.[2] Both the planning policies and the comprehensive plan were final and unappealable at the time the BRB considered the proposed annexation of Stewart's property.
The BRB denied the annexation as premature, because while negotiations between King County and the City of Auburn were ongoing, no interlocal agreement was yet in place. The Stewarts (but not the City of Auburn) appealed to superior court. Superior court granted summary judgment affirming the BRB.

DISCUSSION
We review a decision of the BRB under the standards set forth in RCW 36.93.160(6).[3] We apply these standards directly to the record before the BRB.[4] Stewarts assert the BRB decision is affected by error of law, is unsupported by substantial evidence, and is clearly erroneous.
Propriety of Agricultural Designation
Stewarts contend that the BRB committed an error of law and reached a conclusion unsupported by the evidence when it accepted King County's designation of the property as "agricultural." They argue that this characterization is factually incorrect because the property has not been farmed for some 50 years, is not commercially viable for farming, and thus fails to satisfy the statutory definition of "agricultural land" under the GMA (that is, land primarily devoted to commercial agricultural production, RCW 36.70A.030(2)). They further argue that the BRB could and should have reviewed and rejected the designation.
The Washington Supreme Court has held that land is "devoted to" agricultural use for purposes of the GMA if it is in an area where the land is actually used, or is capable of being used, for agricultural production.[5] But whether the property meets this definition is not a question the BRB is empowered to decide. Boundary review boards may not make land use decisions.[6] Their powers are limited by the enabling statutes, and include the authority to review and approve, disapprove, or modify a proposed change in the boundary of any city.[7] Those powers do not include rejection of a designation contained in a final county comprehensive *1090 plan. Instead, one statutory objective of boundary review boards is the protection of land designated agricultural in a comprehensive plan.[8] Boundary review boards are also required by RCW 36.93.157 to make decisions consistent with specified sections of the GMA. The authority to review compliance with the GMA, on the other hand, is vested in the growth management hearings board (GMHB).[9]
Stewarts' argument that the BRB should determine whether the property meets the GMA definition for agricultural property amounted to a request that the BRB either ignore the comprehensive plan designation as irrelevant, or reach its own conclusion and effectively redesignate the land. To ignore the comprehensive plan designation would conflict with the BRB's statutory duties to make decisions consistent with the purposes of the GMA and to protect designated agricultural land. To redesignate the land would exceed the BRB's powers. The BRB correctly declined to consider the question.
Boundary Review Board's Balancing of Objectives
The BRB is obligated to consider its statutory objectives and attempt to achieve those that are relevant.[10] A decision that fails to achieve any of the objectives is reversible.[11]
RCW 36.93.180 sets forth these objectives:
The decisions of the boundary review board shall attempt to achieve the following objectives:
(1) Preservation of natural neighborhoods and communities;
(2) Use of physical boundaries, including but not limited to bodies of water, highways, and land contours;
(3) Creation and preservation of logical service areas;
(4) Prevention of abnormally irregular boundaries;
(5) Discouragement of multiple incorporations of small cities and encouragement of incorporation of cities in excess of ten thousand population in heavily populated urban areas;
(6) Dissolution of inactive special purpose districts;
(7) Adjustment of impractical boundaries;
(8) Incorporation as cities or towns or annexation to cities or towns of unincorporated areas which are urban in character; and
(9) Protection of agricultural and rural lands which are designated for long term productive agricultural and resource use by a comprehensive plan adopted by the county legislative authority.
The BRB acknowledged the agricultural designation in the comprehensive plan by considering its ninth statutory objective set forth above, protection of agricultural lands, to be "overriding" in its balancing process. In its discussion, the BRB noted that negotiations between the City of Auburn and the County were underway but not concluded, and found:
[A]pproval of the proposed Stewart annexation to the City of Auburn would be inconsistent with the Growth Management Act (GMA) at this time. RCW 36.93.157 requires that Boundary Review Board decisions be consistent with specific sections of GMA, including the Countywide Planning Policies (RCW 36.70A.210). The Countywide Planning Policies adopted by King County under GMA, and ratified by the requisite number of cities within King County, require conclusion of an interlocal agreement between an annexing city and King County prior to annexation of designated resource lands. The requisite interlocal agreement is not in place at this time. Therefore, approval of the proposed annexation would be premature at this time.
In considering the remaining objectives, the BRB analyzed whether annexation, "if further pursued after future conclusion of an interlocal agreement to ensure preservation *1091 of resource lands," would advance each objective.
Stewarts complain that this approach violated the BRB's duty to engage in a proper balancing. In particular, Stewarts claim the BRB erred in considering its ninth objective to be "overriding," and by misconstruing the requirement of RCW 36.93.157 that its decisions be consistent with certain sections of the GMA.
Several circumstances here are important to our analysis. First, the King County Comprehensive Plan is undeniably final with respect to the Stewart property, and the Stewarts concede as much. Thus the agricultural designation is also final.
Second, the King County Comprehensive Plan contemplates completion of interlocal agreements before annexation of agricultural land as a means of implementing the explicit goals of the GMA to: "Maintain and enhance natural resource-based industries, including productive ... agricultural ... industries. Encourage the conservation of productive... agricultural lands, and discourage incompatible uses."[12] The circumstances here illustrate the need for such interlocal agreements; the City of Auburn's comprehensive plan, which is also final, includes the Stewart property within its proposed annexation area.
Third, as discussed above, the governing statute directs the BRB to make its decisions consistent with the GMA:
The decisions of a boundary review board located in a county that is required or chooses to plan under RCW 36.70A.040 must be consistent with RCW 36.70A.020, 36.70A.110, and 36.70A.210.[13]
The first cited section with which consistency is required includes the goals of the GMA (RCW 36.70A.020). The second concerns urban growth areas (RCW 36.70A.110), and the third concerns county-wide planning policies (RCW 36.70A.210). The parties debate the legislative intent regarding the third section, involving consistency with county-wide planning policies. While RCW 36.70A.210 chiefly describes a planning process, the underlying legislative goal is to ensure that comprehensive plans adopted by the county and by cities within the county are coordinated and consistent.[14] The requirement of RCW 36.93.157 that a boundary review board's decision be consistent with RCW 36.70A.210 is thus an expression of legislative intent that a boundary review board ensure annexations are consistent with the substantive provisions of the planning policies.
A county-wide planning policy may provide substantive direction to comprehensive plans if it: (1) meets a legitimate regional objective; (2) does not directly affect the provisions of an implementing regulation or other exercise of land use power; and (3) is consistent with other relevant provisions of the GMA.[15]
Whether or not the King County county-wide planning policies meet this test is not before us. But the comprehensive plan complies with county-wide planning policy directive LU-2, addressing the protection of existing resource lands, by requiring in RL-110 that designated agricultural production district lands should only be annexed if continued resource-based uses are ensured through interlocal agreements. The BRB's decision gives effect to RL-110 and to LU-2. We thus reject Stewarts' contention that the BRB erred when it determined its ninth objective was "overriding."
Stewarts further argue that the BRB misconstrued RCW 36.93.157 by reading it to require that effect be given to the comprehensive plan provision regarding interlocal agreements. Stewarts would have us dismiss the requirement that BRB decisions be consistent with RCW 36.70A.210 as meaning merely that annexations should be disallowed if they do not promote the principle that cities are the primary providers of urban services. Such a reading essentially *1092 renders the section meaningless. The planning process mandated in RCW 36.70A.210 concluded with the adoption of the comprehensive plan. Given the complete revision in land use planning undertaken in the GMA, it is entirely logical to conclude, as did the BRB here, that the legislature intended to require the BRB to make its decisions consistent with the County's comprehensive plan and the policies. An agency's construction of its own statute, while not controlling, is ordinarily given great weight in determining legislative intent.[16] The BRB's interpretation is in harmony with the intent of the legislature that the purposes of the GMA be furthered by boundary decisions, and with the legislative scheme vesting in the GMHBnot the BRBthe adjudicative powers over GMA issues.
Stewarts also point to the language of RCW 36.70A.210(1), wherein the legislature provided that: "Nothing in this section shall be construed to alter the land-use powers of cities." Stewarts argue that annexation powers are land use powers and therefore cannot be limited by a BRB's attempt to comply with this section pursuant to RCW 36.93.157. Stewarts then observe that "presumably if a city got land annexed it would have a free rein to use the land as it wished, regardless of the county-wide planning policies."
Stewarts' argument illustrates the tension between the finality of a comprehensive plan based on the planning policies, and the contrary objective of a city seeking by way of annexation to achieve a result not permitted under the policies or the plan. Indeed, their argument illustrates the reasons the legislature did not vest the BRB with discretion to review comprehensive plans, but rather directed the BRB to make its decisions consistent with GMA goals and county-wide planning policies.[17] We find no error in the BRB's interpretation of its obligation under RCW 36.93.157.
Bremerton/Alpine Cases
In supplemental briefing, Stewarts argue from a recent decision of the GMHB in two coordinated cases: Bremerton v. Kitsap County, No. CPSGMHB 95-30039c (1999), and Alpine Evergreen, Inc. v. Kitsap County, No. CPSGMHB 98-30032c (1999) (hereafter, Bremerton/Alpine). The hearings board there considered the Kitsap County Comprehensive Plan which required (in "associated text") that interlocal agreements be in place before any annexations occur. The GMHB reasoned that a requirement for a joint planning agreement before annexation of joint planning areas within an urban growth area violated the GMA:
Because the challenged plan provisions establish conditions precedent to a city's annexation of lands within a UGA, they are in conflict with some of the most fundamental purposes of UGAs adopted pursuant to RCW 36.70A.110. The Board holds that, once a UGA has been designated, the provisions of a county plan may not condition or limit the exercise of a city's annexation land use power.[18]
Stewarts urge us to adopt the reasoning of the GMHB and invalidate the King County interlocal agreement requirement. There are several problems with their argument. First, this argument was not made to the BRB, and should therefore not be considered by us on appeal from the BRB.[19]
Second, even if the argument had been made, the BRB is not the proper place for such an argumentunder the GMA, this is an issue for the GMHB.
Third, there are important differences in context and in the text of the two plans. For example, the Kitsap plan provision was timely challenged by the affected cities before the plan became final and unappealable, whereas the King County requirement was not challenged by any city and is now final. In addition, neither Kitsap case concerned agricultural *1093 lands. In the Kitsap County plan, the associated text flatly provides that "no annexations will occur" in the absence of interlocal agreements, while the King County plan calls for such agreements only for the specific purpose of preserving the character of designated resource lands. As discussed above, the King County requirement is an implementation of countywide planning policy LU-2 ("Any designated agricultural and forestry lands shall not be considered for urban development"), which in turn is an effort to achieve the GMA's goal of conserving agricultural lands.[20] The Kitsap plan provisions, by further contrast, are to some degree inconsistent with the Kitsap countywide planning policies (although the GMHB refused to reach this issue as not properly raised). Other differences may exist that are not apparent from the face of the GMHB's decision. And finally, we note that an appeal from the GMHB's decision is presently pending in Kitsap County Superior Court.
Stewarts argue that we should nevertheless accept the reasoning of the GMHB and decide as a matter of law that the King County requirement for an interlocal agreement to protect resource lands conflicts with the GMA. We disagree. Just as with their assertion that the BRB could decide the propriety of the designation of their lands as agricultural, this proposal would again avoid presentation of their arguments to the entity created by the legislature to decide them.
In addition, we are not at all sure what decision the GMHB would make here. The broad holding in Bremerton/Alpine that any condition or limitation on annexation in an urban growth area violates the GMAwas not required by the question presented, and we are not informed what arguments were made in Bremerton/Alpine, or what arguments might be made to distinguish the issues here.
It may be correct, as the GMHB apparently reasoned, that a flat prohibition of annexations violates the GMA because the statute presumes urban uses in the urban growth area (RCW 36.70A.110(1)), and consequently "The only GMA mechanism that the County may utilize to prevent an annexation is its designation of the UGA pursuant to RCW 36.70A.110. A city may not annex land that is not within the UGA. RCW 35.13.005."[21]
On the other hand, nothing in the GMA prohibits inclusion of agricultural lands in an urban growth area. Several cases construing the GMA have involved designation of agricultural lands located in a UGA.[22] Nothing in these opinions suggests that such a designation violates the GMA. Further, designated agricultural lands receive different treatment under the GMA, and counties are required to "assure the conservation of agricultural ... lands designated under RCW 36.70A.170."[23] It is thus not clear that a requirement for interlocal agreements to protect resource lands, contained in a final comprehensive plan and intended to implement the policies of the GMA, amounts to a "conflict" with the GMA. And the fact that a city may not annex lands outside an urban growth area does not necessarily mean, as Stewarts seem to argue, that annexation within an urban growth area must always be permitted. But in any case, the arguments either way should be made first to the agency with expertisethe GMHB. For all of these reasons, we decline Stewarts' invitation to apply the reasoning of the GMHB in Bremerton/Alpine to the facts here.
Other Procedural Avenues
Stewarts finally complain that they are left with no procedural avenue for challenging the agricultural designation of their land. But this is not correct. In Torrance v. King County,[24] the Washington Supreme Court considered a challenge to agricultural designation of lands within the King County urban growth area. The owner, like Stewarts, *1094 made no objection to the comprehensive plan designation of their property, for the same alleged reasonhe was unaware of it and received no notice of its adoption. When the designation prevented the sale of the land, he sought a redesignation,[25] which the King County Council denied. Torrance appealed to the GMHB, which decided that while it did not have jurisdiction to review the original designation, it did have jurisdiction to review the County's refusal to redesignate, which it affirmed. Instead of appealing to superior court as permitted by RCW 36.70A.300(5), Torrance sought a constitutional writ in superior court, which was denied. The Supreme Court affirmed, holding that the writ was unavailable because Torrance had a right to appeal: "The decision to forgo an available appeal and to instead seek a remedy by means of a constitutional writ of certiorari is fatal to Torrance's case."[26]
Similarly here, the first step in obtaining review of a county's comprehensive plan is through an appeal to the GMHB. Where, as here and in Torrance, the plan itself is final, either some form of petition to the county for amendment, followed by appeal to GMHB, or (if no such county procedure is permitted) recourse to the constitutional writ, is available to Stewarts. In either case, the precise arguments advanced here as an afterthought can receive a thorough airing before a body authorized to decide them.
Mootness
King County advised this court in supplemental briefing that this matter was rendered moot by a new interlocal agreement between Auburn and King County identifying proposed annexation areas, but not including the Stewart property. After still further briefing and review of the agreement, we are without sufficient information to determine that this matter is moot. It is unclear, for example, what effect the agreement has on the original Auburn City Council approval of annexation of the Stewart property.
We have therefore addressed the parties' arguments.
Affirmed.
WEBSTER, J., and BECKER, J., concur.
NOTES
[1] King County Comprehensive Plan RL-110.
[2] RCW 36.70A.040(4); RCW 36.70A.210. The relevant planning policy is LU-2: "All jurisdictions shall protect existing resource lands within their boundaries that have long-term commercial significance for resource production. Any designated agricultural and forestry lands shall not be considered for urban development."
[3] RCW 36.93.160(6) provides:

The superior court may affirm the decision of the board or remand the case for further proceedings; or it may reverse the decision if any substantial rights may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(a) In violation of constitutional provisions, or
(b) In excess of the statutory authority or jurisdiction of the board, or
(c) Made upon unlawful procedure, or
(d) Affected by other error of law, or
(e) Unsupported by material and substantial evidence in view of the entire record as submitted, or
(f) Clearly erroneous.
[4] King County v. Washington State Boundary Review Bd., 122 Wash.2d 648, 668-69, 860 P.2d 1024 (1993).
[5] City of Redmond v. Central Puget Sound Growth Management Hearings Bd., 136 Wash.2d 38, 53, 959 P.2d 1091 (1998).
[6] Spokane County Fire Prot. Dist. v. Spokane County Boundary Review Bd., 97 Wash.2d 922, 924, 652 P.2d 1356 (1982).
[7] RCW 36.93.090; RCW 36.93.100.
[8] RCW 36.93.180(9).
[9] RCW 36.70A.250-280.
[10] RCW 36.93.180.
[11] King County, 122 Wash.2d at 673, 860 P.2d 1024.
[12] RCW 36.70A.020(8).
[13] RCW 36.93.157.
[14] See e.g. RCW 36.70A.100.
[15] King County v. Central Puget Sound Growth Management Hearings Bd., 91 Wash.App. 1, 14-15, 951 P.2d 1151 (1998) (adopting three-part test of City of Snoqualmie v. King County Central Puget Sound Growth Planning Hearings Bd., No. 92-3-0004, at 62-63 (Mar. 1, 1993)).
[16] See Hama Hama Co. v. Shorelines Hearings Bd., 85 Wash.2d 441, 448, 536 P.2d 157 (1975).
[17] See, e.g. Vashon Island Com. for Self Gov't v. Washington State Boundary Review Bd., 127 Wash.2d 759, 771, 903 P.2d 953 (1995) (harmonizing the BRB statute with the GMA).
[18] Bremerton/Alpine at 48.
[19] See King County, 122 Wash.2d at 668, 860 P.2d 1024 ("Issues not raised before the agency may not be raised on appeal. RCW 34.05.554.").
[20] RCW 36.70A.020(8).
[21] Bremerton /Alpine at 48 n. 40.
[22] See e.g., City of Redmond v. Central Puget Sound Growth Management Hearings Bd., 136 Wash.2d 38, 53, 959 P.2d 1091 (1998); Torrance v. King County, 136 Wash.2d 783, 966 P.2d 891 (1998).
[23] RCW 36.70A.060.
[24] 136 Wash.2d 783, 966 P.2d 891 (1998).
[25] It is unclear from the opinion what exact procedure was followed. The Supreme Court's opinion references a proposed ordinance. Torrance, 136 Wash.2d at 786, 966 P.2d 891.
[26] Torrance, 136 Wash.2d at 792, 966 P.2d 891.