61 P.3d 1211 (2003)
115 Wash.App. 157
Joo Il and Keum Ja KIM, Appellants,
v.
POLLUTION CONTROL HEARING BOARD, et al, Respondents.
No. 27804-9-II.
Court of Appeals of Washington, Division 2.
January 24, 2003.
James Charles Tracy, Poulsbo, WA, for Appellants.
Thomas J. Young, Attorney General's Office, Ecology Division, Olympia, WA, for Respondents.
MORGAN, J.
Joo Il Kim and Keum Ja Kim appeal a ruling that they must have a permit to use well water for their commercial nursery. Based on RCW 90.44.050, we reverse.
Since 1990, the Kims have owned real property on N.W. Central Valley Road in Poulsbo. The property is the site of their home and their business, a commercial nursery called Central Valley Greenhouse. The nursery's components are a greenhouse, a display area of less than a half acre, and parking spaces for eight cars.
The property is served by a well that was drilled in about 1965. The Kims take groundwater from the well for both their residence and the nursery. They use between 100 and 300 gallons per day "to directly water (via hand watering and watering wand) the plants that they raise and offer for sale to the general public."[1] They do not have a permit to take water from the well.
On August 28, 1998, the Department of Ecology (DOE) ordered the Kims to stop using well water for their commercial nursery unless they applied for and obtained a permit. DOE did not order them to stop using well water for their residence.
The Kims appealed DOE's order to the Pollution Control Hearings Board (PCHB). The PCHB affirmed, reasoning in part that it should interpret RCW 90.44.050 not in light of the intent of the 1945 legislature, but rather in light of "our current scientific understanding of ground and surface water continuity, the federal mandates to protect endangered salmon, and the increasing demand *1212 for water to serve our growing population and economy."[2]
The Kims appealed from the PCHB to the superior court, but that court also affirmed. The Kims then appealed to this court, which reviews the decision of the PCHB.[3]
RCW 90.44.050 is the governing statute. It was enacted in 1945. At all times since then, it has provided essentially as follows:
After June 6, 1945, no withdrawal of public ground waters of the state shall be begun, nor shall any well or other works for such withdrawal be constructed, unless an application to appropriate such waters has been made to the department and a permit has been granted by it as herein provided: EXCEPT, HOWEVER, That any withdrawal of public ground waters for stock-watering purposes, or for the watering of a lawn or of a noncommercial garden not exceeding one-half acre in area, or for single or group domestic uses in an amount not exceeding five thousand gallons a day, or for an industrial purpose in an amount not exceeding five thousand gallons a day ... is and shall be exempt from the provisions of this section, but, to the extent that it is regularly used beneficially, shall be entitled to a right equal to that established by a permit issued under the provisions of this chapter: PROVIDED, HOWEVER, That the department from time to time may require the person or agency making any such small withdrawal to furnish information as to the means for and the quantity of that withdrawal:...[[4]]
The overall scheme of this statute is to require a permit except for certain "small withdrawals." The 1945 legislature defined a "small withdrawal" as (1) any amount of water for livestock; (2) any amount of water for a lawn or for a noncommercial garden of a half acre or less; (3) not more than five thousand gallons per day for domestic use; and (4) not more than five thousand gallons per day "for an industrial purpose."
The parties agree that the first three types of withdrawal do not apply to the Kims' use of well water for their commercial nursery. Accordingly, the question for us is whether, when the Kims take well water for their commercial nursery, they are taking such water "for an industrial purpose."
In 1995, DOE's Shorelines and Water Resources Program commented on this "industrial" type of withdrawal in a document that it addressed "to all interested parties." It stated in part:
Following is an outline of Ecology's current understanding regarding the ground water exemption specified in Chapter 90.44 RCW.... This letter is provided to help reduce confusion and contribute to a common understanding of when and where the ground water exemption does apply.
... [T]he entire issue of the ground water exemption is very controversial and is likely to be the subject of legislative action this upcoming session. A strong possibility exists that one or more portions of the current statute will be changed....
Under Washington's ground water code, small users of ground water have historically been exempted from the water right permitting process.... This exemption... is specified in RCW 90.44.050....
. . . .
The following is Ecology's interpretation of the various portions of the exemption language.
A. "... any withdrawal of public ground waters for stock-watering purposes..."
This provision applies to water farm animals (cows, horses, etc.) drink in the course of grazing or otherwise being raised under natural conditions. Commercial animal-rearing operations such as feedlots *1213 and kennels are considered industrial uses of water....
. . . .
D. "... for an industrial purpose in an amount not exceeding five thousand gallons a day ..."
Ecology interprets "industrial" in the broadest possible sense, to include "commercial" and any other general industry. Under this interpretation, a commercial dairy using less than 5,000 gpd would be exempt.
. . . .
Ecology will revise this letter in accordance with any changes made by the legislature. If you have any additional questions, please contact Ecology's ... regional office....[5]
Since 1995, the legislature has not amended RCW 90.44.050, despite a number of proposals that it do so.[6] Ecology, however, has altered its reading of RCW 90.44.050. It now asserts (1) that "the word `industry' excludes agriculture";[7] (2) that "to interpret the `industrial purpose' exemption to apply to irrigation would render meaningless the exemption for noncommercial gardens less than one half acre in size";[8] and (3) that to define "industrial purposes to include horticulture or agriculture would increase the types of uses to which the exemption applies, thus undermining the general rule that withdrawals must be permitted."[9]
We reject DOE's first assertion. At least 24 Washington statutes,[10] six Washington regulations,[11] and ten Washington cases[12] refer to the "agricultural industry." At least 300 cases from other jurisdictions do likewise.[13] Webster's dictionary exemplifies the word "industry" by referring to "the poultry industry."[14] Given the words that the 1945 legislature chose to use, there is no logical reason to allow a business in the construction industry, aluminum industry, or automobile industry to take 5,000 gallons per day without a permit, while denying the same right to a commercial nursery in the horticulture industry. We hold that the words "for industrial purposes" must be applied according to their plain terms, and that their plain terms include the Kims' commercial nursery.
We reject DOE's second assertion. The "industrial purposes" provision exempts commercial *1214 nurseries but not noncommercial gardens. The noncommercial garden provision exempts noncommercial gardens. Each provision has its purpose, and neither provision is superfluouseven if the "industrial purposes" exemption is construed to include commercial nurseries.
We reject DOE's third assertion. To recognize that the "industrial purposes" exemption includes all industries is not to allow water to be used more now than before; it is simply to recognize and apply the law that has existed since 1945.
We do not overlook, but we do reject, the PCHB's apparent view that an administrative agency can alter the plain meaning of a statute to meet changing societal conditions. When a statute is rendered obsolete by changing conditions, the remedy is for the legislature to amend it; neither an administrative agency nor the courts may read it in a way that the enacting legislature never intended. Assuming without holding that RCW 90.44.050 is obsolete, it must be amended by the current legislature, not by PCHB or DOE. Accordingly, we conclude that the Kims' commercial nursery fell within RCW 90.44.050's "industrial purposes" exemption; that the Kims could lawfully take 100-300 gallons per day without a permit; and that the PCHB erred by ruling to the contrary.
Reversed.
We concur: HOUGHTON, J., and QUINN-BRINTNALL, A.C.J.
NOTES
[1] Clerk's Papers (CP) at 73.
[2] CP at 67.
[3] Bowers v. Pollution Control Hearings Bd., 103 Wash.App. 587, 596, 13 P.3d 1076 (2000), review denied, 144 Wash.2d 1005, 29 P.3d 717 (2001) (citing City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 46, 959 P.2d 1091 (1998)); Kaiser Aluminum & Chem. Corp. v. Pollution Control Hearings Bd., 33 Wash.App. 352, 354, 654 P.2d 723 (1982).
[4] Laws of 1945, ch. 263, § 5; Laws of 1947, ch. 122, § 1; Laws of 1987, ch. 109, § 108.
[5] CP at 38-40.
[6] See, e.g., Wash. S.B. 5494 (1995); Wash. S.B. 5593 (1995); Wash. H.B. 1685 (1995); Wash. S.B. 5827 (1995); Wash. H.B. 1772 (1995); Wash. S.S.B. 5517 (1995); Wash. S.S.B. 6698 (1996); Wash. S.B. 5275 (1997); Wash. H.B. 2396 (1998); Wash. H.B. 3106 (1998); Wash. H.B. 1314 (1999); Wash. S.B. 5289 (1999). None of these bills passed.
[7] Br. of Resp't at 9.
[8] Br. of Resp't at 10.
[9] Br. of Resp't at 10.
[10] See, e.g., RCW 15.04.402; RCW 15.08.025; RCW 15.24.900; RCW 15.62.010; RCW 15.65.028; RCW 15.65.033; RCW 15.66.015; RCW 15.66.017; RCW 15.85.010; RCW 15.92.090; RCW 17.24.171; RCW 22.09.405; RCW 28A.300.090; RCW 28B.30.543; RCW 36.70A.020; RCW 36.70A.060; RCW 36.70A.177; RCW 43.23.035; RCW 43.23.042; RCW 43.23.275; RCW 43.23.280; RCW 50.62.010; RCW 50.62.030; RCW 79A.30.050.
[11] See, e.g., WAC 16-470-800; WAC 16-482-001; WAC 16-524-002; WAC 16-470-800; WAC 16-482-001; WAC 16-524-002; WAC 16-752-300; WAC 16-752-700.
[12] King County v. Central Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 14 P.3d 133 (2000); City of Redmond v. Central Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 959 P.2d 1091; Double D Hop Ranch v. Sanchez, 133 Wash.2d 793, 947 P.2d 727 (1997), 952 P.2d 590 (1998); City of Ferndale v. Friberg, 107 Wash.2d 602, 732 P.2d 143 (1987); Stender v. Twin City Foods, Inc., 82 Wash.2d 250, 510 P.2d 221 (1973); Chas. Uhden, Inc. v. Greenough, 181 Wash. 412, 43 P.2d 983 (1935); Griffiths v. Robinson, 181 Wash. 438, 43 P.2d 977 (1935); State v. Clark, 43 Wash. 664, 86 P. 1067 (1906); Stewart v. Washington State Boundary Review Bd., 100 Wash.App. 165, 996 P.2d 1087 (2000); Cox v. Lewiston Grain Growers, Inc., 86 Wash. App. 357, 936 P.2d 1191, review denied, 133 Wash.2d 1020, 948 P.2d 387 (1997).
[13] These cases are too numerous to list but are available through computerized research.
[14] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1155-56 (1969).