Honorable Gregory L. Zempel Kittitas County Prosecutor 205 West Fifth, Room 213 Ellensburg, WA 98926-3129
Jay J. Manning, Director Department of Ecology PO Box 47600 Olympia, WA 98504-7600
Dear Prosecutor Zempel and Director Manning:
By two letters previously acknowledged, you both have requested our opinion on several questions related to groundwater. Prosecutor Zempel initiated this request by asking for our opinion on four questions. Director Manning subsequently posed three additional, but related, questions. Combining your questions into a single list, very slightly paraphrasing them, and placing them into the order in which we respond, your questions are:
 1. Does RCW 90.44.050 restrict groundwater withdrawals without a permit for lawn and noncommercial gardening purposes to a subpart of the 5,000 gallons per day allocated to single or group domestic use, and thus also limit those domestic uses of the exemption to a remainder?
 2. If RCW 90.44.050 does not limit groundwater withdrawals for lawn and noncommercial gardening purposes to a subpart of the 5,000 gallon-per-day limit imposed upon single or group domestic use, may the Department of Ecology implement a rule imposing such a limit by permanently adopting the third version of WAC 173-539A, the Upper Kittitas Groundwater Rule?
 3. Does the Department of Ecology have authority under RCW 90.54.050(2) and related statutes to withdraw groundwater of the state from new appropriations for permitted uses and permit-exempt uses under RCW 90.44.050, but allow an exception for new appropriations that are mitigated in an equal or greater amount by existing trust water rights?
 4. If the answer to question 3 is "yes," does the Department of Ecology have authority, under RCW 90.54.050(2) and related statutes, to withdraw groundwater from new permit-exempt appropriations under a condition that withdraws water for new exempt uses above a certain quantity from appropriation, unless the amount of use above this quantity is mitigated in equal or greater amount by a trust water right?
 5. Does RCW 90.44 preempt the local legislative authority of a county from setting a numeric gallon-per-day limit or group-use limit upon the lawn and noncommercial gardening exemption from permitting?
 6. Does RCW 90.44.050 preempt a county from using its available authority to limit new residential uses of groundwater (including both permitted and permit-exempt uses) proposed as part of a subdivision or building application to a specified quantity, unless the consumptive amount of use above this quantity is mitigated in an equal or greater amount? For purposes of this question, consumptive use is the amount of water by which the withdrawal would reduce flows or levels of any surface water.
 7. Could the Department of Ecology and a county impose such a limit by entering into an agreement?
Prosecutor Zempel posed questions 1, 2, 5, and 7 above, while Director Manning posed questions 3, 4, and 6.
 BRIEF ANSWER
State law allows for certain withdrawals of groundwater that are exempt from its general permitting requirement. These "exempt withdrawals" can be used for certain limited purposes, including water for lawns and noncommercial gardens not exceeding one-half acre, and for single or group domestic uses not exceeding 5,000 gallons per day. State law also provides the Department of Ecology with the authority to withdraw water from further appropriation if the department lacks sufficient information upon which to make sound decisions. Based upon these provisions of state law, we conclude:
 1. In response to your first question, the use for watering lawns and noncommercial gardens is not included within the 5,000 gallon-per-day limit for single or group domestic uses.
 2. In response to both your second and fourth questions, we conclude that the Department of Ecology lacks the authority to impose lower or different limits on exempt withdrawals by "partially withdrawing" the waters of the applicable area from additional appropriations.
 3. We also conclude, in response to your third question, that the authority of the Department of Ecology to withdraw water from new appropriation applies to both permitted and permit-exempt uses. This means that the withdrawal of water from further appropriation has the effect of precluding new exempt withdrawals, except that new appropriations that are mitigated for any consumptive use in equal or greater amount by existing trust water rights may be authorized.
 4. We are unable to respond to your fifth and sixth questions because they inquire about an issue pending in litigation.
 5. Finally, in response to your seventh question, we conclude that the Interlocal Cooperation Act is not an independent source of agency authority, and that therefore the authority for Ecology and the county to enter into an agreement is limited based upon their statutory authority.
 BACKGROUND
As a general rule, anybody who wants to use public groundwater must receive a permit from the Department of Ecology (Ecology) before drilling or digging a well or withdrawing water. RCW 90.44.050. The statute imposing this requirement also recognizes an exception for certain withdrawals of water that are exempt from this permitting requirement. A second statute allows Ecology to "withdraw various waters of the state from additional appropriations" based upon Ecology's conclusion that it lacks sufficient information and data to make sound decisions. RCW 90.54.050(2). That is, Ecology may determine that no new appropriations of water rights may occur until it acquires sufficient information to support its decision-making process. RCW 90.54.050(2). Your questions relate to both of these statutes.
You both pose your questions with regard to groundwater in an area referred to as "Upper Kittitas County," an area that includes Cle Elem, Roslyn, and the surrounding area on the east slope of the Cascades to the King County line. This region forms a part of the headwaters of the Yakima River Basin, in which an action seeking a general adjudication of surface water rights has been proceeding for over thirty years. Dep't of Ecology v. Acquavella,100 Wn.2d 651, 652-53, 674 P.2d 160 (1983). Although that litigation concerns surface water, Ecology has also had an administrative moratorium on the issuance of any groundwater permits in effect throughout the Yakima basin for a number of years.Dep't of Ecology v. Campbell Gwinn, LLC,146 Wn.2d 1, 6, 43 P.3d 4 (2002). We understand that this moratorium remains in effect, and that Ecology has not issued any new groundwater permits in the Yakima River Basin since 1993.See id. Until recently, that moratorium was not applied to withdrawals that are exempt from the general permit requirement. RCW 90.44.050. Such exempt withdrawals[1] were, accordingly, the only method available for obtaining a new appropriation of groundwater in the Upper Kittitas.
Several years ago a private organization petitioned Ecology to preclude the drilling of any new exempt wells. The petition asked Ecology to withdraw the waters of the Upper Kittitas from further appropriation, citing insufficient information regarding the availability of groundwater in the area. Ecology rejected this proposal, and instead agreed with Kittitas County to a series of interim measures, short of withdrawing the basin from all new appropriations. Under that agreement, new residential construction could continue to take place, obtaining water using exempt withdrawals. Those withdrawals, in some cases, would be restricted to using less water than the 5,000 gallons per day that are exempted from permitting under RCW 90.44.050.
Ecology and the county entered into a Memorandum of Understanding describing these interim measures. To implement that agreement, Ecology adopted WAC 173-539A as an emergency rule. Wash. St. Reg. 08-15-020 (July 8, 2008; adopting first version of WAC 173-539A as an emergency rule). An administrative rule adopted on an emergency basis is valid for only 120 days, and expires at the end of that period. RCW 34.05.350(2). When the first set of rules expired, Ecology adopted a second set of emergency rules on the same subject, also denominated as WAC173-539A. Wash. St. Reg. 08-23-012 (Nov. 6, 2008; adopting second version of WAC 173-539A as an emergency rule). When those rules, in turn, expired at the end of 120 days, Ecology adopted a third version of WAC 173-539A, also as an emergency rule. Wash. St. Reg. 09-07-068 (Mar. 13, 2009; adopting third version of WAC 173-539A as an emergency rule). Like the first two versions, the third version of WAC 173-539A restricted, but did not prohibit, the use of water from new exempt withdrawals for residential purposes. WAC 173-539A-055.
At the time Prosecutor Zempel posed his questions, the third version of WAC 173-539A, was in effect. Prosecutor Zempel attached copies of them to his opinion request, and his questions specifically reference the approach to groundwater in the Upper Kittitas set forth in those rules.
Director Manning's questions are based on changed circumstances. After Prosecutor Zempel posed his questions, the third version of the emergency rules expired. Ecology adopted a fourth version of WAC173-539A, which was dramatically different than the prior three. Wash. St. Reg. 09-15-107 (July 16, 2009; adopting fourth version of WAC 174-539A as an emergency rule). The fourth version states: "Beginning on the effective date of this rule, all public groundwaters within the upper Kittitas County are withdrawn from appropriation." WAC 173-539A-040 (fourth version, adopted July 16, 2009). Rather than continuing to authorize new exempt withdrawals under certain restrictions, as provided in the first three versions of WAC 173-539A, the fourth version withdraws the groundwater of the basin from new appropriation. This rule thus sets forth a moratorium against new exempt withdrawals within the Upper Kittitas for the duration of the fourth version of the emergency rules. "No new appropriation or withdrawal of groundwater shall be allowed, including those exemptfrom permitting . . .." WAC 173-539A-040 (emphasis added). The fourth version of the rule provides an exception to the prohibition against new uses for "water budget neutral projects" using a "trust water right program to offset the consumptive use associated with the proposed new use of groundwater." WAC173-539A-050(2) (fourth version, adopted July 16, 2009). Like the earlier versions, however, the fourth version of WAC 173-539A is also an emergency rule, and we understand that consideration of permanent options continues. Director Manning's questions assume the fourth version of the rule as background, but ask about other options that might be considered.[2]
Accordingly, we consider both sets of questions together, because they seek our views regarding the legal options open to both Ecology and the county. Our role in providing this opinion is to address the legal issues you have asked about, but not attempt to resolve a specific dispute or comment on particular facts. We understand that your discussion of available options has continued while we have considered your opinion requests. The full range of legal options you ask about remain appropriate for our consideration, even though the approach Ecology has taken in temporarily adopting emergency rules has evolved.[3]
 ANALYSIS 1. Does RCW 90.44.050 restrict groundwater withdrawals without a permit for lawn and noncommercial gardening purposes to a subpart of the 5,000 gallons per day allocated to single or group domestic use, and thus also limit those domestic uses of the exemption to a remainder?
No. RCW 90.44.050 provides four different purposes for which groundwater may be withdrawn without a permit. Each of those purposes is a separate exemption from the permit requirement. Use of water for lawns and noncommercial gardens not exceeding a half-acre in area does not count against the 5,000 gallon-per-day limit for single or group domestic use.
Prosecutor Zempel posed this question based on the third version of Ecology's administrative rules. That version included a provision that limited the amount of water that could be used for both domestic uses, and lawn and noncommercial garden use, to 5,000 gallons per day. WAC 173-539A-050(3) (third version).
Water law in Washington is premised upon the doctrine of "prior appropriation." Campbell Gwinn, 146 Wn.2d at 7-8. "Under the prior appropriation doctrine, a water right may be acquired where available public water is appropriated for beneficial use, subject to existing rights." Id. at 8 (citing RCW 90.03.010). This is true of both surface water and groundwater. Id. "`Subject to existing rights, all natural ground waters of the state . . . are hereby declared to be public ground waters and to belong to the public and to be subject to appropriation for beneficial use under the terms of this chapter and not otherwise.'" Id. (quoting RCW 90.44.040).
Statutes governing rights to groundwater date from legislation enacted in 1945. In part, those statutes extend prior law governing rights to surface water to the appropriation and beneficial use of groundwater. RCW 90.44.020. Applications for permits for rights to groundwater are accordingly governed by the same principles as applications for rights to surface water. "Thus, before a groundwater permit may be issued to a private party seeking to appropriate groundwater, Ecology must investigate and affirmatively find (1) that water is available, (2) for a beneficial use, and that (3) an appropriation will not impair existing rights or (4) be detrimental to the public welfare." Campbell Gwinn,146 Wn.2d at 8 (citing RCW 90.03.290).
Your questions relate to a statutory exception to this requirement for a permit to withdraw groundwater:
 After June 6, 1945, no withdrawal of public groundwaters of the state shall be begun, nor shall any well or other works for such withdrawal be constructed, unless an application to appropriate such waters has been made to the department and a permit has been granted by it as herein provided: EXCEPT, HOWEVER, That any withdrawal of public groundwaters for stock-watering purposes, or for the watering of a lawn or of a noncommercial garden not exceeding one-half acre in area, or for single or group domestic uses in an amount not exceeding five thousand gallons a day, or as provided in RCW 90.44.052, or for an industrial purpose in an amount not exceeding five thousand gallons a day, is and shall be exempt from the provisions of this section, but, to the extent that it is regularly used beneficially, shall be entitled to a right equal to that established by a permit issued under the provisions of this chapter: PROVIDED, HOWEVER, That the department from time to time may require the person or agency making any such small withdrawal to furnish information as to the means for and the quantity of that withdrawal: PROVIDED, FURTHER, That at the option of the party making withdrawals of groundwaters of the state not exceeding five thousand gallons per day, applications under this section or declarations under RCW 90.44.090 may be filed and permits and certificates obtained in the same manner and under the same requirements as is in this chapter provided in the case of withdrawals in excess of five thousand gallons a day.
RCW 90.44.050.[4]
Under this statute, exempt withdrawals can be used for four different purposes. As explained in a recent appellate decision:
 The overall scheme of [RCW 90.44.050] is to require a permit except for certain "small withdrawals." The 1945 legislature defined a "small withdrawal" as (1) any amount of water for livestock, (2) any amount of water for a lawn or for a noncommercial garden of a half acre or less, (3) not more than five thousand [original page no. 8] gallons per day for domestic use, and (4) not more than five thousand gallons per day "for an industrial purpose."
Kim v. Pollution Control Hearings Bd.,115 Wn. App. 157, 160, 61 P.3d 1211 (2003).
In his first question, Prosecutor Zempel asks whether withdrawals of water for the second listed purpose, "the watering of a lawn or of a noncommercial garden not exceeding one-half acre in area," are included within the 5,000 gallon-per-day limit for the third listed purpose, "single or group domestic uses." RCW 90.44.050. The Court of Appeals' explanation of the statute in Kim, quoted above, would seem to answer this question in the negative. As the court explained, the statute allows four separate exempt uses, and the use for watering lawns or noncommercial gardens is not limited by volume. Kim, 115 Wn. App. at 160.
Kim involved using water from an exempt withdrawal for purposes of a commercial nursery. Id. at 158. The question before the court was whether this constituted "an industrial purpose" within the meaning of the fourth-listed purpose in the statute. Id. at 160. We therefore do not rest our answer to the first question on Kim alone, since the quoted passage from that case is not the court's holding.
It does, however, correctly reflect the ordinary language of the statute. As we explained in an earlier opinion, of the four categories of exempt withdrawals, "the third (single or group domestic use) and the fourth (industrial use) are expressly limited to withdrawals of less than 5,000 gallons a day." AGO 2005 No. 17, at 4. We contrasted this phrasing with the statutory description of the exemption for stock watering, noting the absence of any language limiting the amount of water. AGO2005 No. 17, at 4. The same is true for the exemption for watering lawns and noncommercial gardens. RCW 90.44.050. Our earlier conclusion that the 5,000 gallon-per-day limitation for domestic and industrial uses does not apply to stock watering would accordingly apply equally as well to the watering of lawns and noncommercial gardens. AGO 2005 No. 17, at 4.
Prosecutor Zempel's question raises a slightly different issue, however.[5] It asks not merely whether the 5,000 gallon-per-day limitation could be applied to the watering of lawns and gardens, but whether one exempt use is a subset of another exempt use. Prosecutor Zempel asks whether the use for watering lawns and noncommercial gardens comes within the exemption for domestic use, such that it would count toward the 5,000 gallon-per-day domestic limit. From a certain perspective, it would make sense to think of the watering of a lawn or garden as a type of domestic use of water. The word "domestic" can be used to mean, "connected with the supply, service, and activities of households and private residences," a concept that could include watering the lawn or garden.Webster's Third New International Dictionary 671 (2002). The Legislature listed lawn and garden watering as a separate exemption from domestic uses, however, and so we cannot reasonably conclude that one is included within the other. To do so would render the exemption for lawn and garden watering meaningless, and the Legislature is presumed not to include unnecessary language within a statute. McGinnis v. State,152 Wn.2d 639, 645, 99 P.3d 1240 (2004). We therefore conclude that the exempt use for watering lawns and gardens is not limited to some portion of the 5,000 gallons per day that are allowed for domestic use.
This does not mean that the exemption for watering lawns and noncommercial gardens is unlimited. While the statute does not limit the volume of an exempt withdrawal of waters for this purpose, it does limit the acreage to which the water can be applied. The statute permits the use of an exempt withdrawal "for the watering of a lawn or of a noncommercial garden not exceeding one-half acre inarea." RCW 90.44.050 (emphasis added).
 2. If RCW 90.44.050 does not limit groundwater withdrawals for lawn and non-commercial gardening purposes to a subpart of the 5,000 gallon-per-day limit imposed upon single or group domestic use, may the Department of Ecology implement a rule imposing such a limit by permanently adopting the third version of WAC 173-539A, the Upper Kittitas Groundwater Rule?
No. Prosecutor Zempel asks question 2 in the context of the third version of Ecology's administrative rules. This question requires us to determine whether RCW 90.54.050(2) gives Ecology the authority to impose lower or different limits on the amount of exempt withdrawals of groundwater, rather than precluding new exempt withdrawals entirely. RCW 90.54.050(2) gives Ecology the authority to withdraw waters from availability for further appropriation, and not the authority to modify the statutory provisions addressing exempt withdrawals set forth by the Legislature in RCW 90.44.050.
The third version of the rule continued to allow new exempt withdrawals, but restricted the use of water differently than does RCW 90.44.050. As described in response to the first question, RCW 90.44.050 makes four types of uses of groundwater exempt from permitting requirements, limiting two of those types of uses to not more than 5,000 gallons of water per day and limiting a third based on acreage. Kim, 115 Wn. App. at 160. The third version of the rules restricted exempt withdrawals differently, including counting the use of water for purposes of lawns and noncommercial gardens within an overall limit on all domestic residential water use at a particular parcel. WAC 173-539A-050(3) (third version).
Ecology relied upon RCW 90.54.050(2) as its authority to restrict new exempt withdrawals without banning completely all new exempt withdrawals. WAC 173-539A-020 (third version). Prosecutor Zempel asks whether Ecology had the authority to do this.
The statute reads:
 In conjunction with the programs provided for in RCW 90.54.040(1), whenever it appears necessary to the director in carrying out the policy of this chapter, the department may by rule adopted pursuant to chapter 34.05 RCW:
 (1) Reserve and set aside waters for beneficial utilization in the future, and
 (2) When sufficient information and data are lacking to allow for the making of sound decisions, withdraw various waters of the state from additional appropriations until such data and information are available. Before proposing the adoption of rules to withdraw waters of the state from additional appropriation, the department shall consult with the standing committees of the house of representatives and the senate having jurisdiction over water resource management issues.
 Prior to the adoption of a rule under this section, the department shall conduct a public hearing in each county in which waters relating to the rule are located. The public hearing shall be preceded by a notice placed in a newspaper of general circulation published within each of said counties. Rules adopted hereunder shall be subject to review in accordance with the provisions of RCW 34.05.240.
RCW 90.54.050 (emphasis added).[6]
Ecology described its action in the third version of the rules as a "partial withdrawal" of the basin from new appropriations. WAC173-539A-010(2) (third version); see also WAC173-539A-020 (third version). However, the import of RCW 90.54.050 is that some water that was available for appropriation before Ecology acts will no longer be available after Ecology acts. RCW 90.54.050(2) (authorizing Ecology to withdraw water from "additional appropriations," not to restrict the size of appropriations). This is not what happened under Ecology's "partial withdrawal" approach. Both before and after Ecology adopted the third version of its rule, characterized as "partially withdrawing" the Upper Kittitas basin, new exempt withdrawals could commence. The only difference was how many wells it would take, and how many parcels would need to be developed, to pump the same amount of water. See AGO 1997 No. 6, at 6-7 ("Applying the permit requirement should not turn on an artificial choice of drilling several holes in the ground rather than one, where the withdrawal is for a single purpose."). Ecology's "partial withdrawal" did not "withdraw" the waters from availability for appropriation at all; it merely changed the amount of water available for particular parcels, potentially dividing the water among more parcels. All else being equal, it may be that Ecology's approach would result in a reduction in the overall amount of new groundwater uses in an area. However, RCW 90.54.050(2) does not give Ecology the authority to reduce groundwater use by whatever means it determines; rather, the statute provides to Ecology the authority to withdraw groundwater from appropriation.
This is not to say that exempt withdrawals are exempt from regulation. As discussed more fully in the context of your third question, RCW 90.44.050 merely exempts certain uses of groundwater from the permitting requirement. RCW 90.44.050 (merely exempting such uses from "this section"). Exempt withdrawals are not exempt from other regulatory authority found elsewhere in the water code. This principle, however, should not obscure the distinction between withdrawing water from new appropriations, on the one hand, and regulating the allocation of water among users, on the other. A water right obtained through a permitting process or by way of exempt use are equivalent. RCW 90.44.050 (right obtained through exempt use is "a right equal to that established by a permit"). We do not address Ecology's regulatory authority applicable to all such rights after a water right is acquired, but we do conclude that Ecology lacks the authority to regulate the volume of a water right that may be obtained through the use of exempt withdrawals.
The "partial withdrawal" concept is also inconsistent with RCW 90.54.050 in that the statute authorizes the withdrawal of groundwater "when sufficient information and data are lacking toallow for the making of sound decisions." RCW 90.54.050(2) (emphasis added). The lack of available information to make sound decisions relates to the decision-making process in which Ecology would ordinarily engage when evaluating applications for water rights, or in deciding to permanently close the basin. Other than in the context of exempt withdrawals, for which no permit is required, Ecology would ordinarily evaluate the availability of water and the potential for a new appropriation to impair an existing right, among other factors. Campbell Gwinn,146 Wn.2d at 8. The Legislature would not likely have intended to authorize Ecology to regulate the amount of water that may be withdrawn based upon a lack of information relevant to the subject, when the Legislature has exempted those withdrawals from the permitting process in the first place. RCW 90.44.050; see alsoState v. Alvarez, 128 Wn.2d 1, 11, 904 P.2d 754 (1995) (the court's fundamental objective in construing a statute is to ascertain and carry out the intent of the Legislature).
Ecology's approach of "partially withdrawing" waters from availability for appropriation might be defended based upon an argument that its authority to "withdraw various waters of the state from additional appropriations" (RCW 90.54.050(2)) necessarily includes the lesser authority to restrict those withdrawals. SeeJohnson v. Horizon Fisheries, LLC,148 Wn. App. 628, 637, 201 P.3d 346 (2009) (concluding that a trial court's authority under CR 41(d) to stay all proceedings included the lesser power to stay part of the proceedings); see also Stateex rel. Bowen v. Kruegel,67 Wn.2d 673, 680, 409 P.2d 458 (1965) ("because the greater includes the lesser" the state's constitutional authority to classify cities and enlarge their limits by annexation includes the power to delegate annexation decisions to cities). The "partial withdrawal" contemplated by the third version of Ecology's rules — that is, establishing lower limits on exempt withdrawals than those set forth in RCW 90.44.050 — is not something lesser than, but included in, a complete withdrawal. Here, the third version of WAC 173-539A did not close the area in question to further appropriation, fully or partially. The rules merely limited the amounts of exempt withdrawals without any limit on the total amount of water withdrawn.
Finally, our task is not merely to construe RCW 90.54.050 in isolation; we must harmonize it with RCW 90.44.050. "The construction of two statutes shall be made with the assumption that the Legislature does not intend to create an inconsistency. Statutes are to be read together, whenever possible, to achieve a harmonious total statutory scheme . . . which maintains the integrity of the respective statutes." State ex rel. PeninsulaNeighborhood Ass'n v. Dep't of Transp.,142 Wn.2d 328, 342, 12 P.3d 134 (2000) (alteration in original) (citation and internal quotation marks omitted). RCW 90.54.050 and RCW 90.44.050 are best harmonized by concluding that RCW 90.54.050 authorizes Ecology to "withdraw various waters from the state from additional appropriations" (RCW 90.54.050(2)), but does not imply the authority to impose different limits upon exempt withdrawals than are stated in RCW 90.44.050.
 3. Does the Department of Ecology have authority under RCW 90.54.050(2) and related statutes to withdraw groundwater of the state from new appropriations for permitted uses and permit-exempt uses under RCW 90.44.050, but allow an exception for new appropriations that are mitigated in an equal or greater amount by existing trust water rights?
Yes. Ecology has the statutory authority to withdraw groundwater in an area entirely from appropriation if it lacks sufficient information and data to allow for the making of sound decisions regarding water rights. This includes both new permitted and permit-exempt uses. Ecology may, at the same time, issue permits for new water rights or authorize new exempt withdrawals where the new appropriations of water are mitigated by existing trust water rights.
Director Manning asks about Ecology's authority to withdraw the Upper Kittitas from further appropriation of groundwater under RCW 90.54.050(2).[7] This statute authorizes Ecology to withdraw water from availability for further appropriation when it lacks sufficient information and data upon which to make sound decisions. RCW 90.54.050(2).
Director Manning asks whether the withdrawal of water from new appropriations would apply to exempt uses, in addition to permitted uses of groundwater. It is readily apparent that if Ecology withdraws water from new appropriation under RCW 90.54.050(2), no new permits can be issued authorizing new appropriations. RCW 90.54.050(2) (referring to withdrawing waters from further appropriation). As discussed above, however, RCW 90.44.050 exempts certain uses of groundwater from the permitting requirement, and so we must consider whether the withdrawal of waters from appropriations applies to new exempt withdrawals.
The plain language of RCW 90.44.050 makes clear that the withdrawal of water from further appropriation under RCW 90.54.050(2) applies to new exempt uses.[8]
RCW 90.44.050 begins by requiring a permit from Ecology before anybody can use groundwater, or drill or dig a well. The statutory provision for exempt uses is stated as an exception to that rule. RCW 90.44.050. The statute, however, exempts the exempt withdrawals only from "the provisions of this section." RCW 90.44.050 (emphasis added). That is, exempt withdrawals are only exempted from the requirement of obtaining a permit; they are not made exempt from other laws governing groundwater rights. RCW 90.44.050. Furthermore, if Ecology exercises its authority under RCW 90.54.050, the water is withdrawn "from additional appropriations." RCW 90.54.050(2). The right to an exempt withdrawal of groundwater is a water right equivalent to a right obtained through a permit. RCW 90.44.050; see alsoCampbell Gwinn, 146 Wn.2d at 9 (referring to party making an exempt withdrawal as an "appropriator" of a water right). Since RCW 90.44.050 treats an exempt use as an "appropriation" of water, we therefore conclude that Ecology's exercise of its authority to withdraw water from additional appropriation under RCW 90.54.050(2) affects future exempt wells in the same way as it affects other future appropriations of water rights.
Director Manning also asks whether a rule that withdraws water from further appropriation could also authorize new exempt withdrawals if the new withdrawals are mitigated in an equal or greater amount by existing trust water rights. This aspect of the question addresses the fourth version of Ecology's rules for the Upper Kittitas. They provide that even though the waters of the basin have been withdrawn from availability for further appropriations, certain "water budget neutral" appropriations may still be made if the amount of consumptive use is offset by mitigation from trust water rights. WAC173-539A-050 (fourth version).
Ecology is authorized by statute to acquire water rights by various means, other than condemnation, and apply them to a "trust water rights" program. RCW 90.38.020. The purpose of the program is to use the waters of the Yakima basin more efficiently, "to better satisfy both present and future needs for water in the Yakima river basin." RCW 90.38.005(1)(c). The program makes water available for new uses by encouraging more efficient use of water by the holders of existing water rights. A "trust water right" is statutorily defined to mean "that portion of an existing water right, constituting net water savings, that is no longer required to be diverted for beneficial use due to the installation of a water conservation project that improves an existing system." RCW 90.38.010(3). The term also includes any other water right acquired by Ecology under the authority of RCW 90.38 for the management of a trust water rights program in the Yakima River Basin.[9] RCW 90.38.010(3). Trust water rights can be exercised if Ecology determines that "no existing water rights, junior or senior in priority, will be impaired[.]" RCW 90.38.040(5)(a).
The rule provides that a person desiring to use groundwater shall either apply to Ecology for a permit, or if seeking to commence a permit-exempt use, submit a request for a determination that the proposed exempt use would be "water budget neutral." WAC173-539A-050 (fourth version). In either case, the applicant would need to identify one or more water rights that would be placed into the water right trust program in order to offset the consumptive use that would result from the proposed new use of water, or show that the state already holds a suitable trust water right that has been designated for the proposed use. WAC173-539A-050 (fourth version); see also WAC173-539A-060 (fourth version) (describing expedited process of trust water rights applications). In other words, the fourth version of the rule contemplates new uses of water, either through a permit or through an exempt well, if that new use is fully mitigated by an applicable trust water right.
Application of the trust water rights program is not inconsistent with Ecology's decision to withdraw the waters from availability for new appropriation under RCW 90.54.050(2). The use of a trust water right to compensate for the effect of a new use of water, either based upon a permit or using an exempt withdrawal, results in no net impact or effect on appropriated water rights. It is therefore consistent with the purpose of the withdrawal authority in RCW 90.54.050(2) to preserve the status quo when insufficient information exists to make sound decisions. We, accordingly, answer this portion of Director Manning's question by concluding that Ecology may authorize new permitted or permit-exempt uses of water that are fully mitigated for consumptive use by trust water rights, even if Ecology has withdrawn the applicable area's waters from new appropriation under RCW 90.54.050(2).
 4. If the answer to question 3 is "yes," does the Department of Ecology have authority, under RCW 90.54.050(2) and related statutes, to withdraw groundwater from new permit-exempt appropriations under a condition that withdraws water for new exempt uses above a certain quantity from appropriation, unless the amount of use above this quantity is mitigated in equal or greater amount by a trust water right?
Our response to the fourth question is dictated by our answer to the second question. Director Manning poses the fourth question with reference to the fourth version of the rules, but otherwise focuses upon the same core issue as the second question. As we concluded above, Ecology's authority to withdraw water from new appropriations does not extend to imposing lower or different limits on the uses of water using new exempt withdrawals. This question assumes the authority to establish lower limits by requiring that any amount above such a limit be mitigated.
Director Manning asks not only about authority derived from RCW 90.54.050(2), but directs our attention generally to "related statutes" as well. For example, RCW 90.54.050(1) authorizes Ecology to "[r]eserve and set aside waters for beneficial utilization in the future[.]" RCW 90.54.040(1) authorizes Ecology to implement a comprehensive state water resources program, in order to make decisions on water resource allocation and use. We have identified nothing in these statutes that would alter our analysis and conclusions.
 5. Does RCW 90.44 preempt the local legislative authority of a county from setting a numeric gallon-per-day limit or group-use limit upon the lawn and noncommercial gardening exemption from permitting?
 6. Does RCW 90.44.050 preempt a county from using its available authority to limit new residential uses of groundwater (including both permitted and permit-exempt uses) proposed as part of a subdivision or building application to a specified quantity, unless the consumptive amount of use above this quantity is mitigated in an equal or greater amount? For purposes of this question, consumptive use is the amount of water by which the withdrawal would reduce flows or levels of any surface water.
We must respectfully decline to respond to your fifth and sixth questions, because they raise an issue currently pending in litigation. It is the longstanding policy of this office to decline to provide opinions on matters that are the subject of litigation.See supra note 5.
Both questions ask whether counties are preempted from imposing limits on water usage. Prosecutor Zempel poses question 5 narrowly, focusing on whether a county may impose a numeric limit on the number of gallons per day that may be withdrawn for purposes of watering a lawn or noncommercial garden. Director Manning frames question 6 more broadly, asking whether a county may limit new residential uses of groundwater, both permitted and permit-exempt, under its general police powers or under its Growth Management Act or other authorities, such as the authority to act upon subdivision or building applications. The essential issue raised by both questions is whether state law precludes counties from regulating water usage by assigning to Ecology the authority to regulate water rights and by exempting certain withdrawals from the permitting process. In this regard, Director Manning calls our attention to, among other principles, the Growth Management Act, including a provision under which county comprehensive plans are to address the protection of surface water and groundwater resources. RCW 36.70A.070(5)(c)(iv).
This issue is raised in a case currently pending before Division III of the Washington Court of Appeals, in which the county is a party. Kittitas County v. Kittitas County Conserv., No. 271234 (Wash. Ct. App. Div. III May 16, 2008). That case is before the court on review of a decision of the Growth Management Hearings Board for Eastern Washington. Kittitas CountyConservation Ridge v. Kittitas County, No. 07-1-0015 (Final Decision And Order, Mar. 21, 2008). The board, in that case, found that the Growth Management Act provides counties with, not only the authority, but the responsibility to protect the quality and quantity of water. It concluded that the county's development regulations failed to adequately protect water quality and quantity, regarding the way in which it allowed exempt withdrawals to be used in new development. According to the board, the county did not comply with the Growth Management Act for this reason. Id. at 30. The county has appealed from the board's decision, arguing that its authority to regulate the use of water is preempted by state law. Opening Brief Of Kittitas County, at 29-30, Kittitas County, No. 271234 (Apr. 3, 2009) (citing RCW 90.44.050); see also
Kittitas County Farm Bureau's Brief, at 2-3, Kittitas County, No. 271234 (June 25, 2009) (arguing that Ecology has the exclusive authority to regulate water rights); Opening Brief Of BIAW, at 28-29, KittitasCounty, No. 271234 (Apr. 23, 2009) (same). In response, the opposing parties contend that statutes governing Ecology's authority to regulate water rights, including RCW 90.44.050 governing exempt wells, can be harmonized with the Growth Management Act and the authority it grants to counties to protect water resources. Brief Of Respondents Kittitas County Conservation, Ridge, and Futurewise, at 29-33, Kittitas County, No. 271234. They argue that the county not only had the authority, but the duty, to preclude excessive withdrawals of groundwater through exempt withdrawals. Id. at 32-33.
Questions five and six thus present an issue that is already pending before the Court of Appeals. For this reason, we respectfully decline to address these questions.
7. Could the Department of Ecology and a county impose such alimit by entering into an agreement?
The Interlocal Cooperation Act authorizes state and local agencies to enter into agreements to jointly perform any function that those agencies have the authority to perform. RCW 39.34.030(1), .080. Such agreements, however, are not a new source of authority, but merely provide a method of exercising authority that both contracting parties already have by operation of law. As we have observed: "A crucial prerequisite to an interlocal agreement is that each party must independently have the authority to enter into the services which are the subject of the agreement. . . ." AGO2004 No. 2, at 4 n. 9. As our analysis regarding questions 2 and 4 demonstrates, Ecology lacks the authority to establish different limits on exempt withdrawals than those set forth in RCW 90.44.050. Whether the county has the authority to establish such limits independently is a matter presently in litigation.See Questions 5, 6 supra.
We trust that the foregoing will be useful to you.
ROB MCKENNA, Attorney General
JEFFREY T. EVEN, Deputy Solicitor General
wros enclosure
[1] Our discussion of necessity uses forms of the word "withdraw" in very different ways. The word can be used to mean the act of removing groundwater through a well; however, RCW 90.54.050(2) authorizes Ecology to "withdraw various waters of the state from additional appropriations" using the word in the sense of making water no longer available for appropriation. In order to respond to your questions, we must discuss both withdrawal of water from the ground, and withdrawal of groundwater from availability for appropriation. Context makes the differing uses of the word clear.
[2] On July 31, 2009, Ecology adopted a fifth version of the rule that maintained the provisions of the fourth version discussed in this opinion, but added definitions and a clarification regarding the applicability of the rule. Wash. St. Reg. 09-16-075 (July 31, 2009).
[3] Because both the third and the fourth versions of WAC 173-539A
are relevant to different questions, we attach both versions for ease of reference, and indicate which version we cite in our analysis below.
[4] We recently summarized this statute as stating four points:
 (1) a general rule requiring a water right permit for any withdrawal of public groundwater;
 (2) a proviso excepting identified categories of withdrawals from the general rule — i.e., allowing them without a permit; (3) a second proviso allowing Ecology to require persons making withdrawals excepted from the permit requirement to provide information about the means and amounts of such withdrawals; and (4) a third proviso giving persons, authorized by the statute to withdraw less than 5,000 gallons a day without a permit, the option to obtain a water right through the generally applicable permit process.
AGO 2005 No. 17, at 3.
[5] We note that the question of whether the 5,000 gallon-per-day limit does or does not apply to stock watering is currently at issue in a pending case. "The attorney general has, since statehood, consistently declined to issue opinions on questions already in litigation before the courts, or where litigation is imminent, believing that in such a case the proper tribunal to resolve the question is the court itself." AGLO 1971 No. 129, at 2. As noted in text, however, your question is subtly, but significantly, different than the question of whether the 5,000 gallon-per-day limit applies to stock watering. Not only do you ask about a different exemption, but you ask whether one exemption is subsumed within another.
[6] The statute cross-referenced in RCW 90.54.050 directs Ecology to adopt administrative rules to, among other things, "develop and implement . . . a comprehensive state water resources program which will provide a process for making decisions on future water resource allocation and use." RCW 90.54.040(1).
[7] RCW 90.54.050 is set forth in full in response to your second question.
[8] RCW 90.44.050 is set forth in full in the course of our response to the first question.
[9] RCW 90.38 is limited in its application to the Yakima River Basin. RCW 90.38.005(3).